IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

               Plaintiff,

      v.                                          Civil No. 17-1618

HOMECA RECYCLING CENTER CO., INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT DECREE**

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................................................. 1
II.     APPLICABILITY ................................................................................................................... 2
III.    DEFINITIONS........................................................................................................................ 2
IV.     CIVIL PENALTY ................................................................................................................... 3
V.      COMPLIANCE REQUIREMENTS ........................................................................................ 4
VI.     REPORTING REQUIREMENTS .......................................................................................... 11
VII.    STIPULATED PENALTIES ................................................................................................. 12
VIII.   FORCE MAJEURE .............................................................................................................. 14
IX.     DISPUTE RESOLUTION ..................................................................................................... 15
X.      INFORMATION COLLECTION AND RETENTION.......................................................... 16
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................................... 18
XII.    COSTS ................................................................................................................................. 18
XIII.   NOTICES.............................................................................................................................. 19
XIV.    RETENTION OF JURISDICTION ....................................................................................... 20
XV.     MODIFICATION .................................................................................................................. 21
XVI.    TERMINATION ................................................................................................................... 21
XVII.   PUBLIC PARTICIPATION .................................................................................................. 21
XVIII.  SIGNATORIES/SERVICE ................................................................................................... 22
XIX.    INTEGRATION ................................................................................................................... 22
XX.     FINAL JUDGMENT ............................................................................................................ 22

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA") has filed a complaint in this action concurrently with the lodging of this Consent Decree, which complaint alleges that the Defendant, Homeca Recycling Center Co., Inc., violated Subtitle C of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6921-6940, Section 608 of the Clean Air Act ("CAA"), 42 U.S.C. § 7671g, and Sections 301(a) and 308(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1318(a).

The Complaint specifically alleges that Defendant: (i) violated the regulations promulgated under RCRA by failing to make hazardous waste determinations, improperly disposing of hazardous waste, failing to operate the Facilities to minimize risk, improperly disposing of used oil, improperly storing used oil, and failing to cleanup and properly manage releases of used oil; (ii) violated the regulations promulgated under the CAA by failing to recover refrigerants from motor vehicle air conditioners ("MVACs") prior to crushing, and failing to maintain records regarding the evacuation of MVACs; and (iii) violated the CWA by discharging storm water associated with industrial activities into waters of the United States without a permit, failing to apply for coverage under the National Pollutant Discharge Elimination System ("NPDES") Multi-Sector General Permit ("MSGP") for the discharge of storm water associated with industrial activities at the Facilities, and failing to develop and implement a complete Stormwater Pollution Prevention Plan ("SWPPP"), perform monitoring, maintain records and perform reporting in accordance with the MSGP at the Facilities.

Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), Section 309(a) of the CWA, 33 U.S.C. § 1319(b) and Section 113(b) of the CAA. 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to 28 U.S.C. §§ 1391 and 1395(a), Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), Section 309(a) of the CWA, 33 U.S.C. § 1319(b) and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district. For purposes of this Consent Decree ("CD"), or any action to enforce this CD, Defendant consents to the Court's jurisdiction over this CD and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this CD, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Subtitle C of RCRA, 42 U.S.C. §§ 6921-6940, Section 608 of the CAA, 42 U.S.C. § 7671g, and Section 308(a) of the CWA, 33 U.S.C. § 1318(a).

## II.      APPLICABILITY

3.      The obligations of this CD apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facilities, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligations to ensure that the terms of the CD are implemented. At least 30 days prior to such transfer, Defendant shall provide a copy of this CD to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 2, and the United States Department of Justice, in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this CD.

5.      Defendant shall provide a copy of this CD to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this CD, as well as to any contractor retained to perform work required under this CD. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this CD.

6.      In any action to enforce this CD, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this CD.

## III.      DEFINITIONS

7.      Terms used in this CD that are defined in RCRA, the CAA and the CWA or in regulations promulgated pursuant to such statutes shall have the meanings assigned to them in such statutes or such regulations, unless otherwise provided in this CD. Whenever the terms set forth below are used in this CD, the following definitions shall apply:

"Appliance" means any device which contains and uses a Refrigerant and which is used for household or commercial purposes, including any air conditioner, refrigerator, chiller, or freezer;

"Complaint" means the complaint filed by the United States in this action;

"Consent Decree" or "CD" means this Consent Decree including its Appendix A;

"Day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this CD, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendant" means Homeca Recycling Center Co., Inc.;

"EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" means the date upon which approval of this CD is recorded on the Court's docket;

"Facilities" means Defendant's facilities located at  State Road 183 Km 4.3, Tomas de Castro Ward, Caguas, P.R. ("Caguas Facility"), State Road 309 and State Road 103, Guanajibo Ward Hormigueros, P.R. ("Hormigueros Facility"), and Calle Salmon, Playa de Ponce, Ponce, P.R. ("Ponce Facility");

"Motor Vehicle" mean any vehicle that is self-propelled and designed for transporting persons or property on a street or highway, including passenger cars, light duty vehicles, and heavy duty vehicles, and includes crushed or compressed motor vehicles, also known as motor vehicle "carcasses;"

"Paragraph" or "¶" means a portion of this CD identified by an Arabic numeral;

"Parties" means the United States and Defendant;

"Refrigerant" means any substance consisting in part or whole of a class I or class II ozone-depleting substance that is used for heat transfer purposes and provides a cooling effect;

"Section" means a portion of this CD identified by a roman numeral;

"State" means the Commonwealth of Puerto Rico;

"Substitute" means any chemical or product, whether existing or new, that is used by any person as an EPA-approved replacement for a class I or class II ozone-depleting substance in a given refrigeration or air-conditioning end-use;

"United States" means the United States of America, acting on behalf of EPA.

## IV.    CIVIL PENALTY

8.      Defendant shall pay the sum of $50,000 as a civil penalty in two installments, with the first installment of $25,000 due 30 days after the Effective Date, and the second installment of $25,000 due 120 days after the Effective Date. The second installment

payment must include an additional sum for interest, as provided for in 28 U.S.C. § 1961, accrued from the Effective Date to the date of payment.

a.    The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Puerto Rico shall provide Defendant, in accordance with Section XIII, with instructions regarding payments under this CD.  The instructions shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made under this CD.

b.    Defendant shall make the payments under ¶ 8 by Fedwire Electronic Funds Transfer ("EFT") or at https://www.pay.gov. The payments shall: (i) be paid to the U.S. Department of Justice account; (ii) be paid in accordance with the instructions provided under ¶ 8.a; and (iii) reference the CDCS No., and DJ No. 90-7-1-10023.

c.    At the time of each payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII; and (iii) to the EPA ORC contacts in accordance with Section XIII. Such notice shall reference the CDCS Number and the DJ number.

d.    Defendant shall not deduct any penalties paid under this CD pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.    COMPLIANCE REQUIREMENTS

9.    All requirements under this Section must be commenced by the deadlines set forth in Appendix A ("Timetable") and implemented during the effective period of this CD.

10.   **RCRA Work Plan**. Defendant shall submit for EPA approval a proposed work plan (in English to EPA and in Spanish for Defendants Employees), that describes procedures for the following activities at the Facilities:

a.    Inspection of incoming vehicles for fluids.

b.    Management of all hazardous wastes and used oil from crushing activities, including the following:

(1)    All vehicle fluids, components listed below and other potential hazardous wastes that are contained in or are part of the vehicle must be removed, collected and managed in compliance with all applicable hazardous and solid waste regulations.

(2)    If the conditions of ¶ 10.b(1) have been met, the fluid collected or spilled during crushing operations ("crusher fluids") may be managed as used oil

4

under the requirements of 40 CFR Part 279 and need not be managed under applicable hazardous waste requirements.

(3)    If all subject fluids and components are not removed prior to crushing of each vehicle, all resulting crusher fluid must be managed presumptively as hazardous waste, unless Homeca can show by a waste characterization analysis that each waste comprising the crusher fluid is not hazardous.

c.    Vehicle storage before crushing. Vehicles must be stored on a bermed concrete surface until the vehicle is drained of all fluids.

d.    Decommissioning of vehicles before crushing, including the following:

(1)    Fluids, including Refrigerants and Substitutes, must be drained before crushing.

(2)    Refrigerants and Substitutes must be recovered and managed in accordance with ¶ 12 (CAA Requirements).

(3)    Vehicles must be fully drained, employing industry standard methods (or equivalent methods approved by EPA), prior to crushing. Fuel filters must be removed, with the fuel drained and collected. Oil filters must be removed and hot drained, then punctured, crushed, dissembled or emptied by air pressure or comparable means. Spent oil and fuel filters may be managed together after draining, but they may not be drained together and their liquid contents may not be mixed. Recovery of all auto fluids and filters must be performed by "qualified personnel" as provided in ¶ 10.h.

(4)    Fluids such as fuel, used oil, transmission fluid, and anti-freeze/coolant, must be stored in separate containers that are properly labeled.

e.    The following toxic materials must be removed before crushing: (i) batteries, including lead acid; (ii) all accessible lead components, including wheel weights and battery cable ends; (iii) all detachable, mercury-containing auto components; and (iv) airbag cartridges (unless already discharged before acceptance at the Facility such as in a motor vehicle accident). These materials must be stored in separate containers that are properly labeled, and recycled, resold or properly managed as hazardous waste or universal waste (as appropriate).

f.    Crushing Operations, including the following:

(1)    Vehicle crushers, including mobile crushers, must be situated on a bermed concrete surface under a roof and protected from the weather. The floor surface must be sloped to contain fluids, with provision for fluid collection and management. Crushers must be positioned near the center of the surface or concrete pad rather than along the edge.

      (2)     Containers for fluid capture must be fitted to the crusher.

      (3)     Each crusher and adjacent areas must be inspected daily for leaks, spills, and equipment maintenance issues. Inspections must include fluid capture connections and containers. A written or electronic log must be kept of all inspections, any findings, and any repairs.

      (4)     Crusher fluids, including fluids from any pads or underdrain systems, must be managed as hazardous waste unless all removable fluids and potential hazardous wastes were removed as required above prior to vehicle crushing.

   g.     Procedures for Vehicle Storage After Crushing, including the following:

      (1)     Crushed vehicles must be stored on a bermed concrete pad. The floor surface must be sloped to route fluids to a collection bin;

      (2)     The storage areas must be inspected daily for leaks and spills. A written or electronic log must be kept of all inspections, findings, and repairs; and

      (3)     Spills and other fluids collected must be managed as hazardous waste unless all removable fluids and potential hazardous wastes were previously removed as required above or Homeca can demonstrate with a characterization analysis that the waste is not hazardous.

   h.     Homeca shall ensure that all work described in ¶ 10 is performed by "qualified personnel" by ensuring that such work is only done by employees subject to a training program that meets and maintains ongoing compliance, for each employee, with the personnel training requirements of 40 C.F.R. § 265.16.

11.   **Investigation and Corrective Action Plan**. Defendant must:

   a.     Submit for EPA approval plans (in English) for investigations of the nature and extent of contamination in the various media (soils, groundwater, sediments) at each Facility;

   b.     Perform investigations, in accordance with the EPA-approved  plans, of the nature and extent of the contamination of each Facility;

   c.     If the results of any investigation warrants remediation of contamination of any Facility, submit for EPA's approval a plan for such remediation; and

   d.     Complete such remediation, for each Facility, by the deadline specified in the approved remediation plan for such Facility, and in accordance with the approved plan.

12. **Clean Air Act Requirements**

a.  A trained employee of Defendant must inspect each Appliance and Motor Vehicle delivered at each Facility to determine whether Refrigerant or a Substitute is present. Defendant shall log each inspection including the inspection date, the serial number or VIN of the Appliance or Motor Vehicle, name of inspector, presence of Refrigerant or a Substitute (Y/N), and the method for determining the presence of Refrigerant or a Substitute.

b.  If the inspection indicates that the Appliance or Motor Vehicle contains Refrigerant or a Substitute, Defendant must recover the Refrigerant or Substitute, regardless of the type of Refrigerant or Substitute, at no cost to the party delivering the Motor Vehicle or Appliance and without reducing the value of the scrap. Defendant may not reject Appliances or Motor Vehicles containing Refrigerant or a Substitute. Notwithstanding the foregoing, Defendant may notify all suppliers or seller of Appliances and Motor Vehicles that Refrigerant must be properly removed before delivery of the items to the Facility. The form of this notification may be warning signs, letters to suppliers, seller, vendor contracts to large suppliers that obligates such suppliers to remove Refrigerants before delivery, or other equivalent means.

c.  Defendant must maintain a log documenting each recovery of Refrigerant or Substitute, including the date of the recovery, the VIN or serial number of the Appliance or Motor Vehicle, the technician's name, and the amount and type (if possible to determine) of Refrigerant or Substitute recovered.

d.  Defendant must maintain a log documenting the reclamation, disposal, or other disposition of all Refrigerant and Substitute it recovers from Appliances or Motor Vehicles. The log must include any receipts documenting the disposition of recovered Refrigerant and Substitutes.

e.  If Defendant's inspection indicates that the Appliance or Motor Vehicle does not contain Refrigerant or a Substitute, Defendant must obtain a verification statement indicating: (1) that the supplier properly recovered the Refrigerant or Substitute or (2) that the Appliance or Motor Vehicle did not contain Refrigerant or a Substitute when the supplier or seller obtained the Appliance or Motor Vehicle. For long-term repeat suppliers only, annual contractual verification statements are acceptable in lieu of individual verification statements, provided, however, that Defendant must still inspect each Appliance or Motor Vehicle delivered. All other suppliers must complete a verification statement for each Appliance or Motor Vehicle delivered.

f.  If Defendant determines that any repeat supplier or seller routinely fails to comply with Section 608 of the CAA or 40 C.F.R. Part 82, Subpart F, Defendant must provide the name, address, and telephone number of that supplier to EPA in accordance with Section XIII.

13. **Clean Water Act Requirements**

    a.     **Permit Coverage**.

        (1)      Defendant shall seek and obtain coverage under the MSGP for all applicable stormwater discharges associated with industrial activity from all outfalls at each of its Facilities, if not done so already. In the event that an additional, unpermitted outfall is discovered at any of its Facilities, Defendant shall immediately submit a revised Notice of Intent ("NOI") to the USEPA via the NPDES eReporting Tool ("NeT") to include accurate outfall information.

        (2)      Defendant shall comply with the MSGP at each Facility.

    b.     **Stormwater Pollution Prevention Plans**

        (1)      Defendant shall submit to EPA for approval an updated Stormwater Pollution Prevention Plan ("SWPPP") for each of its Facilities subject to the MSGP that meets the requirements of the current version of the MSGP. *See* Part 5.2 ("Contents of Your SWPPP") and all subparts of the 2015 MSGP. This includes procedures for performing inspections and analytical monitoring required under the MSGP.

        (2)      Where applicable, Defendant shall include in the SWPPP for each of its Facilities procedures and modified schedules for conducting quarterly visual assessments and benchmark monitoring in climates with irregular stormwater runoff. *See* Parts 3.2.3, 5.2.5.2, 5.2.5.3, 6.1.6 and 6.2.1.2 of the MSGP.

    c.     Defendant shall, for each Facility, review the SWPPP annually (and as conditions require pursuant to Parts 4.1 and 4.2 of the 2015 MSGP) and update the SWPPP as necessary in order to ensure it accurately reflects site conditions and continues to meet MSGP requirements.

    d.     **Quarterly Benchmark Monitoring**

        (1)      Defendant shall conduct quarterly monitoring for the benchmark parameters specified in Parts 8.M and 8.N of the MSGP at each of its Facilities subject to the MSGP.

        (2)      After collection of four consecutive quarterly (or other frequency established in an EPA-approved monitoring schedule) samples, if the average of four monitoring values for any parameter exceeds the benchmark, Defendant shall review the selection, design, installation, and implementation of its control measures to determine if modifications are necessary to meet the benchmark limits in the MSGP, and take required follow-up actions, in accordance with the conditions set forth in Part 4

("Corrective Actions") and Part 6.2.1.2 of the MSGP. This may include making necessary modifications and continuing quarterly (or other established frequency) monitoring until Defendant has completed four additional monitoring events for which the average does not exceed the benchmark.

e.     **Annual MSGP Compliance Report**. Defendant shall submit an Annual Report for each of its Facilities to EPA electronically via NeT by January 31st of each year of permit coverage that includes all items required by Part 7.5 of the 2015 MSGP.

f.     **Maintenance of Records**. Defendant shall, for each Facility, maintain a copy of the current and complete SWPPP (including a SWPPP modification log) and keep with the SWPPP the following records: employee training log(s), additional documentation requirements pursuant to Part 5.5 of the MSGP (including but not limited to Corrective Action documentation), all reports and certifications required by the MSGP (including but not limited to Routine Facility Inspection Reports, Quarterly Visual Inspection Reports and Annual Reports), monitoring data, and records of all data used to complete the NOI, for a period of at least three years from the date that coverage under the MSGP expires or is terminated.

g.     **Best Management Practices**. Defendant shall implement Best Management Practices ("BMPs") at each Facility in accordance with the applicable SWPPP. Defendant shall also implement the following requirements at each Facility:

(1)     Ensure that storm water conveyances are not covered or obstructed;

(2)     Ensure that scrap metal piles are organized according to process stages and are not scattered;

(3)     Ensure that entrances are stabilized and that sediments are not tracked out of Facility;

(4)     Ensure that all oil and other liquids leaking from parked or stored vehicles is collected and properly managed;

(5)     Ensure that valves in secondary containment are kept closed;

(6)     Prepare a Spill Prevention, Control, and Countermeasure (SPCC) plan for each Facility with aboveground storage capacity of oil greater than 1,320 gallons, or underground storage capacity greater than 42,000 gallons, and implement the SPCC plans;

(7)     Ensure that all machinery being repaired is repaired on a concrete or other impermeable surface; and

(8)     Ensure that dumpsters are covered.

14.   **Approval of Deliverables**.

    a.    After review of any plan, report, or other item that is required to be submitted pursuant to this CD, EPA shall in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

    b.    If the submission is approved pursuant to ¶ 14, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution). For the Work Plans submitted under ¶¶ 10 and 11, Defendant shall also generate Spanish-language versions of such work plans that are consistent with EPA's approvals or conditional approvals. Defendant shall submit the Spanish-language versions of the work plans to EPA and shall maintain them on file at the Facilities.

    c.    If the submission is disapproved in whole or in part, Defendant shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with ¶ 14.b.

    d.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in Section VII.

    e.    Any stipulated penalties applicable to the original submission, as provided in Section VII, shall accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this CD, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

15.   **Permits**. Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure

to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.   REPORTING REQUIREMENTS

16.   **Semi-Annual Reports**. By July 31st and January 31st of each year after the Effective Date, until termination of this CD pursuant to Section XVI, Defendant shall submit a semi-annual report for the preceding six months that describes that status of Defendant's compliance with the RCRA, CAA and CWA requirements of this CD. The semi-annual reports shall also include a description of any non-compliance with the CD's requirements and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days after Defendant becomes aware of the cause of the violation.

17.   **Annual Corrective Action Reports**. For each Facility, Defendant shall submit to EPA an annual report that includes descriptions of: (i) its compliance with ¶ 11; (ii) the status of any site investigations under ¶ 11; (iii) the results of any site investigations under ¶ 11; (iv) the status of any corrective action implemented under ¶ 11. Each annual report is due on January 31st of the year following the year covered by the report.

18.   **Immediate Threats**. Whenever any event occurs at any Facility that may pose an immediate threat to the public health or welfare or the environment and relates to Defendant's compliance under this CD, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the event. This procedure is in addition to the reporting requirements under ¶¶ 16 and 17.

19.   All reports shall be submitted to the persons designated in Section XIII (Notices).

20.   Each semi-annual or annual report submitted under this Section shall be signed by an official of the Defendant and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

11

21.   The reporting requirements of this CD do not relieve Defendant of any reporting obligations required by RCRA, the CAA or the CWA or their implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22.   Any information provided pursuant to this CD may be used by the United States in any proceeding to enforce the provisions of this CD and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

23.   Defendant shall be liable for stipulated penalties to the United States for violations of this CD as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this CD, including any work plan or schedule approved under this CD, according to all applicable requirements of this CD and within the specified time schedules established by or approved under this CD.

24.   **Late Payment**. If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per day for each day that the payment is late.

25.   **Compliance Milestones.** The following stipulated penalties shall accrue for each day of each failure: (a) to operate the Facilities consistent with the requirements of ¶ 10 on an interim basis pending EPA approval of the RCRA Work Plans; (b) to submit RCRA Work Plans under ¶ 10 or Investigation and Corrective Action Plans under ¶ 11; (c) to comply with the approved or modified RCRA Work Plans under ¶ 10; (d) to comply with the approved or modified Investigation and Corrective Action Plans under ¶ 11; (e) to comply with the CAA Requirements under ¶ 12; or (f) to comply with the CWA Requirements under ¶ 13.

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st through 60th day |
| $3,000 | 61st day and beyond |

26.   **Reporting Requirements**. The following stipulated penalties shall accrue for each day of each violation of the reporting requirements of Section VI:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $150 | 1st through 14th day |
| $300 | 15th through 30th day |
| $500 | 31st day and beyond |

27.   Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this CD.

28.     Defendant shall pay any stipulated penalty within 30 days of receiving the United States' written demand.

29.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this CD.

30.     Stipulated penalties shall continue to accrue as provided in ¶ 27, during any Dispute Resolution, but need not be paid until the following:

   a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

   b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in ¶ 30.c.

   c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

31.     **Obligations Prior to Effective Date**. Upon the Effective Date, the stipulated penalty provisions of this CD shall be retroactively enforceable with regard to any and all violations of Section V that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this CD is entered by the Court.

32.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by ¶¶ 8.b and 8.c, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

33.     If Defendant fails to pay stipulated penalties according to the terms of this CD, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

34.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this CD.

35.     **Non-Exclusivity of Remedy**. Stipulated penalties are not the United States' exclusive remedy for violations of this CD. Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this CD or applicable

law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this CD shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this CD.

## VIII.   FORCE MAJEURE

36.    "Force majeure," for purposes of this CD, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this CD despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this CD.

37.    If any event occurs or has occurred that may delay the performance of any obligation under this CD, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

38.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this CD that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

40.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of ¶¶ 36 and 37. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this CD identified to EPA and the Court.

## IX.     DISPUTE RESOLUTION

41.     Unless otherwise expressly provided for in this CD, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this CD. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this CD.

42.     **Informal Dispute Resolution**. Any dispute subject to Dispute Resolution under this CD shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

43.     **Formal Dispute Resolution**. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

44.     The United States shall serve its Statement of Position within 45 days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

45.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the CD.

46.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

47.     **Standard of Review**

    a.      **Disputes Concerning Matters Accorded Record Review**. Except as otherwise provided in this CD, in any dispute brought under ¶ 43 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this CD; the adequacy of the performance of work undertaken pursuant to this CD; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b.      **Other Disputes**. Except as otherwise provided in this CD, in any other dispute brought under ¶ 43, Defendant shall bear the burden of demonstrating that its position complies with this CD and better further the objectives of the CD.

48.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this CD, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in ¶ 30. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.     INFORMATION COLLECTION AND RETENTION

49.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this CD, at all reasonable times, upon presentation of credentials, to:

    a.      Monitor the progress of activities required under this CD;

    b.      Verify any data or information submitted to the United States  in accordance with the terms of this CD;

c.    Obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.    Obtain documentary evidence, including photographs and similar data; and

e.    Assess Defendant's compliance with this CD.

50.    Upon request, Defendant shall provide EPA or its authorized representatives with splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

51.    Until five years after the termination of this CD, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this CD. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

52.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this CD shall be withheld on grounds of privilege.

53.    Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

54.    This CD in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

55.   This CD resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of the CD.

56.   The United States reserves all legal and equitable remedies available to enforce the provisions of this CD. This CD shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under RCRA, the CAA, the CWA, or implementing regulations under such statutes, or under other federal laws, regulations, or permit conditions.

57.   In any subsequent administrative or judicial proceeding initiated by the United States  for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States  in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to ¶ 55.

58.   This CD is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this CD shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this CD, warrant or aver in any manner that Defendant's compliance with any aspect of this CD will result in compliance with provisions of RCRA, the CWA or the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

59.   This CD does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this CD, nor does it limit the rights of third parties, not party to this CD, against Defendant, except as otherwise provided by law.

60.   This CD shall not be construed to create rights in, or grant any cause of action to, any third party not party to this CD.

## XII.   COSTS

61.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

18

## XIII.   NOTICES

62.   Unless otherwise specified in this CD, whenever notifications, submissions, or communications are required by this CD, they shall be made in writing and addressed as set forth below. Submissions made in accordance with the requirements of a particular statutory program need only be sent to the EPA personnel listed for that program.

As to the United States by email:   eescdcopy.enrd@usdoj.gov
                                    Re: DJ # 90-7-1-10023

As to the United States by mail:   EES Case Management Unit
                                   U.S. Department of Justice
                                   Environment and Natural Resources Division
                                   P.O. Box 7611
                                   Washington, D.C. 20044-7611
                                   Re: DJ # 90-7-1-10023

EPA RCRA Contact:                  Steven Petrucelli
                                   RCRA Compliance Branch
                                   U.S. Environmental Protection Agency, Region 2
                                   Division of Enforcement and Compliance Assistance
                                   290 Broadway, 21st Floor
                                   New York, NY  10007-1866
                                   Tel: 212-637-4084
                                   petrucelli.steven@epa.gov

EPA CAA Contact:                   Joseph Cardile
                                   CAA Compliance Branch
                                   U.S. Environmental Protection Agency, Region 2
                                   Division of Enforcement and Compliance Assistance
                                   Air Compliance Branch
                                   290 Broadway, 21st Floor
                                   New York, NY  10007-1866
                                   Tel: 212-637-4054
                                   cardile.joseph@epa.gov

EPA CWA Contact:                   Katherine Mann
                                   CWA Compliance Branch
                                   U.S. Environmental Protection Agency, Region 2
                                   Division of Enforcement and Compliance Assistance
                                   Water Compliance Branch
                                   290 Broadway, 20th Floor
                                   New York, NY  10007-1866
                                   Tel: 212-637-4226
                                   mann.katherine@epa.gov

| | |
|---|---|
| EPA RCRA ORC Contact: | Jeannie M. Yu, Esq.<br>Assistant Regional Counsel<br>U.S. Environmental Protection Agency, Region 2<br>Office of Regional Counsel<br>290 Broadway, 16th Floor<br>New York, NY  10007-1866<br>Tel: 212-637-3205<br>yu.jeannie@epa.gov |
| EPA CAA ORC Contact: | Evans Stamataky, Esq.<br>Assistant Regional Counsel<br>U.S. Environmental Protection Agency, Region 2<br>Office of Regional Counsel<br>290 Broadway, 16th Floor<br>New York, NY  10007-1866<br>Tel: 212-637-3201<br>stamataky.evans@epa.gov |
| EPA CWA ORC Contact: | Melva J. Hayden, Esq.<br>Assistant Regional Counsel<br>U.S. Environmental Protection Agency, Region 2<br>Office of Regional Counsel<br>290 Broadway, 16th Floor<br>New York, NY  10007-1866<br>Tel: 212-637-3230<br>hayden.melva@epa.gov |
| As to Defendant: | Alberto Ramos Perez, Esq.<br>Alberto L. Ramos Law Offices<br>P.O. Box 750<br>Mercedita, P.R. 00715-0750<br>787-284-2971<br>alberto_ramosperez@yahoo.com |

63.   Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

64.   Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this CD or by mutual agreement of the Parties in writing.

## XIV.   RETENTION OF JURISDICTION

65.   The Court shall retain jurisdiction over this case until termination of this CD, for the purpose of resolving disputes arising under this CD or entering orders modifying this CD, pursuant to Sections IX and XV, or effectuating or enforcing compliance with the terms of this CD.

## XV.   MODIFICATION

66.     The terms of this CD, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this CD, it shall be effective only upon approval by the Court.

67.     Any disputes concerning modification of this CD shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by ¶ 47, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVI.   TERMINATION

68.     After Defendant has completed the requirements of Section V (Compliance Requirements), has thereafter maintained continuous satisfactory compliance with this CD for a period of three years, and has paid the civil penalty and any accrued stipulated penalties as required by this CD, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

69.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this CD. If the United States agrees that the CD may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the CD.

70.     If the United States does not agree that the CD may be terminated, Defendant may invoke Dispute Resolution under Section IX. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 days after service of its Request for Termination.

## XVII.   PUBLIC PARTICIPATION

71.     This CD shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the CD disclose facts or considerations indicating that the CD is inappropriate, improper, or inadequate. Defendant consents to entry of this CD without further notice and agrees not to withdraw from or oppose entry of this CD by the Court or to challenge any provision of the CD, unless the United States has notified Defendant in writing that it no longer supports entry of the CD.

## XVIII. SIGNATORIES/SERVICE

72.     The undersigned representative of Defendant and the Deputy Section Chief of the U.S. Department of Justice, Environment and Natural Resources Division, Environmental Enforcement Section each certifies that he or she is fully authorized to enter into the terms and conditions of this CD and to execute and legally bind the Party he or she represents to this document.

73.     This CD may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this CD and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX.    INTEGRATION

74.     This CD constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the CD and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this CD, or in any deliverables that are subsequently submitted and approved pursuant to this CD.

## XX.     FINAL JUDGMENT

75.     Upon approval and entry of this CD by the Court, this CD shall constitute a final judgment of the Court as to the United States and Defendant. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Entered on this  13     day of December, 2017

                                        S/Aida M. Delgado-Colón

                                        Chief United States District Judge

**FOR THE UNITED STATES OF AMERICA**:


_5/11/17_                            _/s/ Ellen M. Mahan_
Date                                ELLEN M. MAHAN
                                    Deputy Section Chief
                                    U.S. Department of Justice
                                    Environment and Natural Resources Division
                                    Environmental Enforcement Section


                                    MARK A. GALLAGHER
                                    Senior Attorney
                                    U.S. Department of Justice
                                    Environment and Natural Resources Division
                                    Environmental Enforcement Section
                                    Washington, DC  20044-7611


                                    ROSA EMILIA RODRIGUEZ-VELEZ
                                    United States Attorney
                                    District of Puerto Rico

                                    CARMEN MARQUEZ
                                    Assistant United States Attorney
                                    District of Puerto Rico
                                    Torre Chardon, Suite 1201
                                    350 Carlos Chardón Avenue
                                    San Juan, Puerto Rico 00918

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY**:


_/s/ Eric Schaaf_
ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region II
290 Broadway, 17th Floor
New York City, NY  10007-1866

MELVA J. HAYDEN
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region II
Office of Regional Counsel
290 Broadway, 17th Floor
New York City, NY  10007-1866

EVANS STAMATAKY
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region II
Office of Regional Counsel
290 Broadway, 17th Floor
New York City, NY  10007-1866

JEANNIE M. YU
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region II
Office of Regional Counsel
290 Broadway, 17th Floor
New York City, NY  10007-1866

**FOR HOMECA RECYCLING CENTER CO., INC.:**

_  12/28/16  _                         _  /s/ Carlos O. Sanchez Delgado  _
Date                            CARLOS O. SANCHEZ DELGADO
                                President
                                Homeca Recycling Center Co., Inc.
                                PMB 323-200
                                Ave. Rafael Cordero, Suite 140
                                Caguas, Puerto Rico  00725


                                ALBERTO RAMOS PEREZ
                                Alberto L. Ramos Law Offices
                                USDC 209905
                                P.O. Box 750
                                Mercedita, P.R. 00715-0750
                                787-284-2971
                                alberto_ramosperez@yahoo.com

## APPENDIX A

## TIMETABLE FOR COMPLIANCE OBLIGATIONS

| Description | ¶ | Deadline |
|---|---|---|
| Submit RCRA Work Plans to EPA for approval | 10 | 60 days after ED |
| Commence operating Facilities in a manner consistent with requirements for RCRA Work Plan on interim basis pending EPA approval of RCRA Work Plan | 10 | 30 days after ED |
| Commence compliance with EPA-approved, modified or corrected RCRA Work Plans | 10 | 30 days after approval of RCRA Work Plan |
| Submit Investigation Plans to EPA for approval | 11 | 90 days after ED |
| Commence compliance with Investigation/Corrective Action Plans | 11 | 45 days after approval |
| Commence compliance with CAA Requirements | 12 | 30 days after ED |
| Seek coverage under the MSGP at each Facility for any remaining unpermitted outfalls | 13.a(1) | 30 days after ED |
| Commence compliance with MSGP at each Facility (if applicable) | 13.a(2) | Upon obtaining MSGP coverage |
| Submit SWPPP for each Facility to EPA | 13.b(1) | 30 days after ED |
| Commence compliance with SWPPP | 13.b(1) | 30 days after approval |
| Commence quarterly benchmark monitoring | 13.d | 30 days after ED or in accordance with the modified schedule in the approved SWPPP (if applicable) |
| Commence implementing best management practices | 13.g | 60 days after ED |

"ED" means Effective Date.

"Approval" as used herein also includes modification and/or correction in accordance with ¶ 14.